IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MRINAL THAKUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:16-cv-811-TFM |
| | ) | [wo] |
| ERIC BETZIG, et. al., | ) | |
| | ) | |
| Defendants, | ) | |

## **MEMORANDUM OPINION AND ORDER**

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties pursuant to 28 U.S.C. § 636(c). *See* Docs. 24, 25. Now pending before the Court is Defendants' Motion to Dismiss and brief in support (Docs. 12-13, filed December 5, 2016). After a careful review of all the written pleadings, motions, responses, and replies, the Court GRANTS Plaintiff's alternative requests (Docs. 20 and 29) that the case be severed and transferred to the more appropriate venues in the Northern District of California and District of Maryland pursuant to 28 U.S.C. § 1404(a). The motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 12) is DENIED as moot. Any remaining motions including the remaining portion of the motion to dismiss for 12(b)(6) (Doc. 12) remain pending for the determination of the transferee courts.

### I.  JURISDICTION

Plaintiff asserts claims pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, that the citizenship of all parties is diverse and the amount in controversy exceeds $75,000.00. He asserts state law claims for (1) fraud and suppression, (2) Negligence, (3) Wantonness, (4) Negligent and/or Wanton Training, Supervision, and Monitoring, (5) Unjust Enrichment, and (6)

Conversion.  *See* Doc. 1.  No party contests subject matter and adequate support exists for its determination.  Defendants all contest personal jurisdiction and is the basis for the subject motion.  *See* Docs. 12-13.

## II.   PARTIES AND BACKGROUND

Plaintiff is Mrinal Thakur ("Thakur" or "Plaintiff") is an individual who resides in Auburn, Alabama. Doc. 1 at ¶ 1.  Plaintiff is a professor in the Department of Mechanical Engineering at Auburn University and is the Director of Photonic Materials Research Laboratory at the university.  *Id*. at ¶ 7.  Plaintiff is the co-inventor of electrically conductive polymers and has several patents and publications related to nonconjugated conductive polymers.  *Id*.  On October 7, 2016, Plaintiff filed suit in this court alleging that Defendants Eric Betzig ("Betzig"), Howard Hughes Medical Institute ("HHMI"), William E. Moerner ("Moerner"), and Stanford University ("Stanford") – collectively "Defendants" – wrongfully plagiarized, misappropriated, stole, and otherwise utilized Plaintiff's work product to obtain the 2014 Nobel Prize in Chemistry for the development of super-resolution fluorescence microscopy.  *See id. generally*.  Plaintiff asserts claims for (1) fraud and suppression, (2) negligence, (3) wantonness, (4) negligent and/or wanton training, supervision and monitoring, (5) unjust enrichment, and (6) conversion.  *Id*. at ¶¶ 13-38.

Defendants Betzig and Moerner received the 2014 Nobel Prize in Chemistry.  Betzig resides in Ashburn, Virginia and HHMI "employed Defendant Betzig as a scientist at its Jenelia Research Campus and reaped the benefits of Defendant Betzig's actions and conduct." Doc. 1 at ¶¶ 2-3.  HHMI is a corporation with its principal place of business in Chevy Chase, Maryland.  *Id*.  Moerner resides in Palo Alto, California and Stanford University "employed Defendant Moerner as a scientist and reaped the benefits of his actions and conduct."  Doc. 1 at ¶¶ 4-5.

Stanford is an educational institution doing business as a corporation whose principal place of business is Palo Alto, California. *Id*.

The 2014 Nobel Prize in Chemistry was awarded to Eric Betzig, Stefan W. Hell and William E. Moerner for discovery of "Super-Resolved Fluorescence Microscopy". The resolution in this microscopy transitions beyond standard limits (Abbe's limit). Therefore, smaller structures within a fluorescent organic material can be detected.

A major approach used in this microscopy that utilizes lasers with short-duration (femtosecond) pulses, is based on third order (nonlinear) optical effects in organic materials. The earliest detailed third order optical studies on organic crystals were initiated by Professor Mrinal Thakur and colleagues back in 1985 - more than ten years earlier than the first report of a successful demonstration of super-resolved microscopy by the 2014 Nobel recipients.

The central correlation governing the line-width (resolution) controllably decreasing with laser light intensity is given in equation 3 of the 2014 Nobel document preserved at the Nobel Foundation website. This equation shows that detectable radiation (line-width) can go beyond Abbe's limit if higher light intensity is used. This equation is based on saturation dynamics in third order optics, in particular in this case, involving fluorescence of organic dye molecules (stimulated emission depletion). A derivation of this equation using the theory and experiments previously published by Thakur et al. has been recently published in the Journal of Macrornolecular Science, Part A, Pure and Applied Chemistry. This is a refereed journal in which scientific reports are not accepted for publication without expert reviews.

It is important to note that no derivation of equation 3 was given by the Nobel Prize recipients in their published articles. In some of their publications other equations based on kinetics studies have been developed but those are different and inaccurate. The equation 3 as given in the Nobel document is correct and can only be derived using the theoretical mode' (phase-space filling) for nonlinear Optics in organic materials as developed and experimentally verified by Professor Thakur and colleagues. While there are other approaches discussed in the document for achieving super-resolution, equation 3 provides the only systematic and reliable procedure to gain super-resolution by increasing laser light intensity at selected wavelengths. Therefore, understanding the origin of this equation is critical. As given in Professor Thakur's recent article, this equation can be derived in a fairly straight-forward manner using the basic equation in phase-space filling model on nonlinear optics published about 10 years earlier than the publications on demonstration of super-resolution.

Professor Thakur and colleagues published and presented hundreds of articles on experiments and theory of nonlinear optical properties of organic crystals and

> films, in highly reputed journals and conferences (e.g. Physical Review Letters, Applied Physics Letters, Macromolecules, Journal of Materials Science, MRS Proceedings and others) beginning on around 1985. Thus, the nonlinear optical coefficients, excited-state lifetimes and the detailed saturation dynamics and their quantitative interpretations have all been established prior to the works on super-resolved fluorescence microscopy. This microscopy would not be possible to demonstrate without the in-depth knowledgebase established by Professor Thakur and colleagues.

Doc. 1 at ¶¶ 8-12.

The crux of the allegations against the individual defendants (Betzig and Moerner) rests on the assertion that they had a duty to represent and/or disclose that they utilized Plaintiff's work product in the development of super-resolution fluorescence microscopy – which ultimately enabled them to receive the Nobel Prize. Rather, Plaintiff alleges Betzig and Moerner falsely represented to the Nobel Prize Committee that no one else's work product was utilized in developing their research and specifically suppressed that Plaintiff's work product was utilized. *Id*. at ¶¶ 14-18 (Count 1 – Fraud and Suppression). Moreover, Betzig and Moerner had a duty to reveal they utilized Thakur's work product and breached that duty by concealing their use of the work. *Id*. at ¶¶ 19-22 (Count 2 – Negligence). Finally, Betzig and Moerner wantonly, recklessly, knowingly, and purposefully misappropriate Plaintiff's work product. *Id*. at ¶¶ 23-25 (Count 3 – Wantonness).

The allegations against the corporate defendants (Stanford and HHMI) stem from their employment and supervision of the individual defendants. Specifically, HHMI and Stanford negligently and/or wantonly failed to properly train, supervise, and/or monitor Betzig and Moerner. *Id*. at ¶¶ 26-29 (Count 4 – Negligent and/or Wanton Training, Supervision and Monitoring). As a result, they inequitably benefitted from the individual defendants' actions. *Id*. at ¶¶ 30-34.

Finally, all Defendants converted for their own use – illegally and unlawfully – work product created and developed by Plaintiff which was his intellectual property. The conversion was wanton and done without the knowledge or consent of Thakur. *Id*. at ¶¶ 35-38. For damages, Plaintiff seeks compensatory and punitive damages plus costs.

On December 5, 2016, Defendants filed their collective Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. Docs. 12-13. They assert that (a) the Court lacks personal jurisdiction over Defendants, (b) the Complaint fails to comply with minimal pleading standards, (c) Counts 1-2 of the complaint fail to allege that he relied on any alleged misrepresentation, and (d) the wantonness, unjust enrichment, and conversion claims are all displaced by the Alabama Trade Secrets Act.

On December 29, 2016, Plaintiff submitted his response in opposition, alleging that this Court does have personal jurisdiction, or alternatively, if it does not, can transfer the case to an appropriate venue where jurisdiction will not be a contested issue. Doc. 20. If transferred then the remaining issues would be left for resolution by the gaining court. Plaintiff specifically requests that the case be transferred to the District Court of Maryland if the Court determines that it lacks personal jurisdiction. *Id*. at p. 7.

Defendants filed a collective reply on January 17, 2017, alleging a change in venue would not resolve jurisdictional issues. Doc. 23. Moreover, they further argue the District Court in Maryland would not have jurisdiction over Defendants Betzig, Moerner, or Stanford. And, even if it did, the transfer would not be appropriate without first resolving the motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

On June 5, 2017, this Court ordered a supplemental briefing on alternative federal locations. Doc. 26. In response, Plaintiff avers that Maryland or California would be

appropriate. Doc. 27. Plaintiff argues Maryland's long-arm statute reaches Moerner and Stanford because both Defendants transacted business and performed work and service in Maryland by collaborating with Defendants HHMI and Betzig located and employed in Maryland. *Id.* at p. 6. Plaintiff further alleges that because at least a part of the fraud, suppression, and negligence took place in Maryland, this "caused tortious injury by act or omission in Maryland." *Id.* In the alternative, Plaintiff California also provides an appropriate jurisdiction and venue. *Id.* at p. 7. Specifically, Moerner and Stanford are located and work there while Betzig worked in conjunction with those defendants. Finally HHMI received the benefits of its employee. *Id*. at p. 7-9.

Defendants also filed a supplemental brief in response to the Court's Order. However, rather than file any alternative arguments on venue as the Court requested, Defendants put all their eggs in one basket and argue that "there is no single, alternate location that would have personal jurisdiction over all four defendants…[t]herefore, the only proper course is for the Court to dismiss the Complaint. Doc. 28. Defendants further allege that even if a court was able to exercise personal jurisdiction over Defendants, transfer is still unwarranted due to Plaintiff failing to state a claim upon which relief may be granted. *Id.*

On June 16, 2017, Plaintiff filed his response to Defendants' supplemental brief. Doc. 29. Plaintiff additionally notes that Defendant Betzig accepted a position with the University of California at Berkley for summer 2017. Plaintiff attaches an exhibit which contains a Berkeley Press Release dated September 27, 2016 which states "Nobel Prize-winning physicist Eric Betzig…will join the UC Berkeley faculty in the summer of 2017. Concurrent with [his] hire at UC Berkeley, Betzig and Ji will have joint appointments and research programs at Lawrence Berkley National Laboratory (Berkeley Lab) as faculty scientists." *Id*., Exhibit 1. Finally, as yet

another alternative, Plaintiff states that if this Court cannot find a single proper venue, the case could be severed and transferred accordingly. *Id*. t p. 2.

Defendants filed a Reply to Plaintiff's Supplemental Brief on an Alternative Federal Forum on June 16, 2017, alleging that that no single, alternate location has personal jurisdiction over all four Defendants. Doc. 30. Defendants allege that Plaintiff's argument is flawed because it relies on the supposed collaboration of Moerner and Betzig in the discoveries which lead to the awarding of the Nobel Prize. *Id.* Defendants allege that the Nobel Committee expressly notes that Betzig's and Moerner's contributions were independent of one another and asks the Court to take judicial notice of the article submitted as part of this reply. *Id.*

### III. STANDARDS OF REVIEW

**A. Motion to Dismiss for Lack of Jurisdiction – Fed. R. Civ. P. 12(b)(2)**

A plaintiff need only establish a prima facie case of jurisdiction, and may do so by presenting evidence sufficient to defeat a motion for judgment as a matter of law. *Delong v. Washington Mills,* 840 F.2d 843, 845 (11th Cir. 1998); *South Alabama Pigs v. Farmer Feeders, Inc.,* 305 F. Supp.2d 1252 (M.D. Ala. 2004) (citing *Perry v. Household Retail Services, Inc.*, 953 F. Supp. 1378, 1380 (M.D. Ala. 1996)). "The burden for overcoming a motion for judgment as a matter of law is the same as that for overcoming a motion for summary judgment; legally sufficient evidence must exist to create a genuine issue of material fact." *Id.* (citing *Cleote Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987)).

When a nonresident defendant challenges personal jurisdiction, the plaintiff must establish personal jurisdiction that comports with (1) the State's long-arm statute and (2) the requirements of the due-process clause of the Fourteenth Amendment. *See Alabama*

*Waterproofing Co., Inc. v. Hanby*, 431 So.2d. 141, 145 (Ala. 1983); *Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992); *see also* Ala. R. Civ. P. 4.2(b) (current version of statute referenced by courts). Alabama's long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000); *Am. Home. Assur. Co. v. Weaver Aggregate Transp., Inc.*, 719 F. Supp. 2d 1333, 1336 (M.D. Ala. 2010). Therefore, a plaintiff may establish the court's personal jurisdiction over a defendant by showing the requirements of due process have been met. *Oliver*, 979 F.2d at 830; *Morris v. SSE, Inc.*, 843 F.2d 489, 494 n.3 (11th Cir. 1988).

Due process first requires that the defendant perform "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" - that is "minimum contacts" with the forum state. *Morris*, 843 F.2d at 492 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)); *South Alabama Pigs*, 305 F.Supp.2d at 1257 (citations omitted). Second, the exercise of personal jurisdiction over the defendant must not offend the "traditional notions of fair play and substantial justice." *Morris*, 843 F.2d at 492 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed 95 (1945)); *South Alabama Pigs*, 305 F.Supp.2d at 1257 (citations omitted). Both conditions must be satisfied to establish personal jurisdiction over a defendant.

Two types of personal jurisdiction exist: specific and general. Specific jurisdiction is based on the party's contacts with the forum state that are related to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General personal jurisdiction arises from a party's contacts

with the forum state that are unrelated to the litigation. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d 1250, 1253 (M.D. Ala. 2006) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9, 104 S.Ct. at 1872). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11thCir. 2000), *cert. denied*, 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001).

**B.     Motion to Dismiss for Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Gilmore, 125 F. Supp.2d at 471. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (*citing St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd.*

*v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966. Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.* at 570, 127 S. Ct. at 1974. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561, 127 S. Ct. at 1968 (internal quotation and alteration omitted). Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

**C.     Transfer of Venue**

If the Court concludes that venue is not proper, the Court can transfer the case under 28 U.S.C. § 1406(a) to a federal district where it could have been brought if it would be "in the interest of justice," *See* 28 U.S.C. § 1406(a). Specifically, 28 U.S.C. § 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought." *See also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir. 1993) (citing § 1401(a)). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F.Supp.2d 1290, 1307 (N.D. Ala. 2003) (citation omitted); *see also England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) ("Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue").

### IV. DISCUSSION AND ANALYSIS

While the Supreme Court stated that questions of personal jurisdiction should generally be decided before questions of venue, "when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979). Thus, "[i]f a venue issue renders the personal jurisdiction problem moot, thus avoiding the need to address constitutional questions, consideration of venue before personal jurisdiction is appropriate." *United States ex rel. Norshield Corp. v. E.C. Scarborough*, 620 F. Supp. 2d 1292, 1294 (M.D. Ala. 2009) (citing *Corbello v. DeVito*, Civ. Act. No. 1:07-cv-985, 2008 U.S. Dist. LEXIS 40336, 2008 WL 2097435, *2 (E.D. Tex. May 19, 2008)).

Defendants continued to collectively argue that only dismissal would be appropriate because there is no single forum where Plaintiff could pursue his claims. However, Plaintiff is correct in asserting that in instances where claims may be time barred, that transfer is favored over dismissal. In the case at hand, dismissal may prejudice the plaintiff's ability to maintain this suit. Thus, the interests of justice weigh in favor of severing and transferring this case to proper venues. Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a

case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a).

The Court acknowledges that this case presents some complications because of the multiple geographic locations involved. Specifically, Moerner is an individual residing in California, Stanford is a non-profit institution located in California. Betzig is an individual residing in Virginia, but also seemingly has accepted a position with UC Berkeley for the summer of 2017. Finally, HHMI is a non-profit company incorporated in Delaware, headquartered in Maryland, and has a research facility located in Ashburn, Virginia.

Plaintiff argues that Maryland and California are both appropriate jurisdictions. Plaintiff seemingly favors Maryland, but only supports that argument by stating that "at least part of the fraud, suppression and negligence alleged against Defendants took place in Maryland." *See* Doc. 27 at p. 6.

**A.     California**

Defendants Stanford and Moerner are physically located in the Northern District of California and therefore are subject to its jurisdiction. Thus, the Court need only look to Defendants Betzig and HHMI.

Defendant Betzig also *could* be subjected to jurisdiction in California. The Court need not determine whether specific personal jurisdiction exists in this venue because it is clear that general personal jurisdiction currently exists because Betzig has sufficient contacts with the state to satisfy California's long-arm statute. California's long-arm statute authorizes the exercise of personal jurisdiction on any basis not inconsistent with the state or federal constitution. Cal. Code. Civ. P. § 410.10. Betzig has "substantial, continuous, and systematic" contacts with the

state through his acceptance with a position with UC Berkeley. *See* Doc. 29, Ex. 1; *see also* http://physics.berkeley.edu/people/faculty/eric-betzig (specifying Betzig as a member of Berkeley's faculty).[1]

Defendants argues his new employment would not subject Betzig to jurisdiction because it the Court should only look to the facts as they existed at the time of the Complaint having been filed. Defendants argue Betzig's contact with California "is irrelevant to the personal jurisdiction analysis…[and] the only relevant contacts are contacts existing at the time of the Complaint is filed." The Court need not address this argument though because Betzig's contacts with Berkley and his acceptance of employment occurred *before* the filing of this lawsuit. The complaint was filed on October 7, 2016. *See* Doc. 1. It is clear from the Berkeley press release that no later than September 27, 2016, Defendant Betzig accepted employment with Berkeley prior to the filing of this lawsuit.

**B.      Maryland**

It is clear that because HHMI is headquartered in Chevy Chase, Maryland that it would be subject to jurisdiction in the Maryland District Court. Therefore, the Court looks to Betzig, Moerner, and Stanford. Beyond Plaintiff's unsupported statement that some aspects of the collective fraud and suppression took place there, it is not clear on the current record how Plaintiff seeks to establish jurisdiction over those three defendants in Maryland.

Though the Court is required to view facts in the light most favorable to the Plaintiff, the record before the Court is not clearly established that the remaining defendants have sufficient contacts with Maryland to satisfy the Maryland long-arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103. Defendant Betzig at the time lived and worked in Virginia. The fact HHMI

---

[1] It is not clear from the record whether Betzig currently resides there, but that is unnecessary for the Court's determination.

is headquartered in Maryland is not enough to clearly establish that the torts alleged against him occurred in the state of Maryland. Rather, it would seem they would have occurred in Virginia.

**C.     Virginia**

Defendant Betzig lived in Ashburn, Virginia at the time of the alleged claims. As such, it is clear he would be subject to jurisdiction there. Further, HHMI acknowledges it has a research facility in Ashburn, Virginia. Thus, it has continuous and systematic contacts with the state such that jurisdiction is established. *See* Va. Code. Ann. § 8.01-328.1. Therefore, the Eastern District of Virginia is an appropriate venue for these two defendants. Thus, the question is whether Stanford or Moerner can be subject to jurisdiction in Virginia. As with Maryland, the sole argument on this jurisdiction is that a portion of the alleged collaboration may have occurred there. However, as before, the Court is not convinced based on the current record that the remaining two defendants have sufficient contacts with Virginia to satisfy the Virginia long-arm statute.

**D.     Severance of parties**

As previously noted, the geographic disparities and the lack of clear evidence make it difficult to determine that any one venue is appropriate. However, the Court does find that severance is also an appropriate course of action. While that would establish two cases, it does satisfy jurisdictional and venue concerns while also addressing the "interests of justice" needed to overcome issues on statute of limitations. As such, the Court is left with two options. First, the Court could sever HHMI and send the claims against it to the District Court of Maryland while sending the other three defendants (Stanford, Moerner, and Betzig) and those claims to the Northern District of California. Second, the Court could sever Betzig and HHMI and send the claims against those defendants to the Eastern District of Virginia while sending the claims

against Stanford and Moerner to the Northern District of California. Ultimately, neither solution is perfect, but allow for the Plaintiff to pursue his claims in an appropriate forum while also providing a fair venue to the respective defendants.

Ultimately, given the nature of the claims and considering the current location of the Defendants, the Court finds that the first option is the most palatable especially as Defendant Betzig is now residing in California and is no longer in Virginia. Thus, the Court will sever Defendant HHMI and transfer that portion of the case to the District of Maryland. The remaining Defendants the claims will be transferred to the Northern District of California.

## V. CONCLUSION

As this Court has already determined that a transfer of venue is appropriate, the ruling on the 12(b)(6) motion to dismiss is appropriately deferred for the consideration by the gaining courts, such that the newly assigned court shall determine whether dismissal or an amended complaint is necessary or appropriate. Further, the motion to dismiss for personal jurisdiction under Rule 12(b)(2) is rendered moot by the transfer.

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court ORDERS the following:

(1) The Plaintiff's alternative motion to sever (Doc. 29) and motion to transfer venue (Docs. 20, 29) are GRANTED.

(2) The Clerk of Court is DIRECTED to sever Defendant Howard Hughes Medical Institute into a separate civil case. All documents shall be copied to the new civil case.

(3) Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 12) is DENIED as moot.

(4) Defendants' motion to dismiss for failure to state a claim (Doc. 12) remains pending for the transfer courts.

A separate order will be entered directing the transfer of each case after the new case is fully docketed.

DONE this 17th day of October, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE